# The United States Court of Federal Claims

Case No. 06-463C
(Filed: December 7, 2009)
Not For Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
| | |
|---|---|
| TB PENICK & SONS, INC., | \* |
| *Plaintiff,* | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES OF AMERICA, | \* |
| *Defendant.* | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Craig A. Ramseyer**, San Diego, California, attorney of record for Plaintiff. With him on the briefs was **Katherine M. Knudsen.**

**Devin Andrew Wolak**, with whom were **Deborah A. Bynum, Jeanne E. Davison and Tony West,** Department of Justice, Washington, D.C., for Defendant.

**Amelia C. Moorstein**, law clerk.

## OPINION/ORDER

**BASKIR, Judge**

This is a dispute between TB Penick & Sons, Inc. (TBP) and the General Services Administration (GSA) for damages incurred during performance of a construction contract. The narrow issue before the Court at this time is whether TBP has produced evidence to support a claim for damages for increased costs due to Government delay. To obtain delay damages, TBP must prove, among other things, that the Government was the sole proximate cause of the delay at issue. We conclude TBP has produced sufficient evidence to allow a reasonable fact-finder to find that it has met this burden. TBP has therefore shown there is a genuine issue of material fact. Consequently, **we DENY Defendant's Motion for Partial Summary Judgment.**

**I.    BACKGROUND**

A.    *Procedural History*

TBP filed a Complaint in this Court on June 15, 2006, alleging that GSA had failed to pay the outstanding balance due on the contract and had failed to make the appropriate equitable adjustments for changed conditions.  Furthermore, the Complaint asserted that GSA had improperly denied or failed to timely respond to over 30 separate claims for additional compensation.  Accordingly, TBP asked for total damages "in excess of $2,000,000."

In response to the Complaint, the Government filed a Motion for a More Definite Statement requesting that the Court order TBP to file a new Complaint that would specifically set forth the 30 separate claims TBP had submitted to GSA.  The Court granted this Motion, and accordingly, TBP filed an Amended Complaint that set forth TBP's specific claims and asked for damages of $2,194,000.

The Government filed its Answer and later amended its Answer to include a counterclaim for liquidated damages.  After Discovery had been completed, the Government filed a Motion for Partial Summary Judgment for those claims based upon a delay analysis.  These claims are stated in paragraphs 11(f), (g), (o), (u), (gg), and (ii) of Plaintiff's Amended Complaint and total approximately $683,437.00.

The Government contends that TBP failed to consider whether there was any delay not caused by the Government, as required by the last sentence of the Federal Acquisition Regulation (FAR) 52.242-14 (Suspension of Work) provision incorporated in the contract.  It bases its position on a review of Plaintiff's evidence describing how the Time Impact Analysis (TIA)  was prepared.  This evidence allegedly shows that TBP ignored possible delay caused by non-government sources.  In response, TBP asserts that it did consider whether it was responsible for any concurrent delays when calculating delay damages.

B.   *Factual Background*

The facts in this case are taken from the papers filed by the parties. On December 22, 2003, TBP and GSA entered into Contract No. GS-09P-04-KTC-0022 (the "contract"). Under the contract, TBP agreed to construct the New Temecula Border Patrol Facility Station located in Murrietta, CA, for a price of $7,950,000.

The notice to proceed stated that work was to commence on February 17, 2004, and the project would last 404 calendar days. During the course of the project, 375 Requests for Information (RFIs) and 89 contract modifications were issued. The Government extended the duration of the project by 104 days through three modifications: Modification Nos. PS05, PS08, and PC30.

i. Time Extension Requests

TBP submitted five time extension requests during the project. TBP was required to prepare and submit these requests according to the TIA procedure. This procedure is set forth in Section 01320-3.8 ("Adjustments for Times of Completion") of the contract. Def.'s App. 33-34. This provision mandates that TBP state the extent of the requested adjustment, provide information justifying the request, and conduct an analysis on the effect the time extension would have on the rest of the project. The request would not be granted unless there was insufficient project float to absorb the time extension caused by the delay. TBP asserts that it complied with the procedure set forth in the Adjustments for Times of Completion provision. All five time extensions were either denied outright or effectively denied through a failure to issue a final decision.

The five TIA requests were based on four acts by GSA that allegedly delayed project completion and increased the cost of performance. These events include (1) delay in issuing a formal change order for the masonry block (masonry procurement delay); (2) failing to issue plans at the beginning of the project to connect the building to utilities of the local municipality (offsite utilities design delay) (two TIAs); (3) delay in responding to RFIs relating to structural steel design (structural steel

design delay); and (4) delay in approving security system finishes (security system design delay):

(1) Masonry Procurement Delay: The bid plans and specifications called for metric masonry block. On March 2, 2004, TBP informed the Government that metric masonry block was not available. At the end of May 2004, TBP ordered imperial masonry block at the direction of the government after attending meetings and writing proposals and mock-ups. No formal change order was issued. TBP submitted a TIA on June 7, 2004 for a 48 day extension due to this issue.

(2) Offsite Utilities Design Delay: The approved design for the offsite utilities was supposed to be available to TBP when the project started, but TBP did not receive approved designs for five months after the start of the project. The initial designs continued to be changed and remained unresolved until May 26, 2005. TBP submitted a TIA for an extension of 238 days due to this issue on May 24, 2005. TBP also submitted a TIA for a 61-day extension on August 17, 2005, due to this same issue.

(3) Structural Steel Design Delay: A lack of coordination among the design professionals caused construction of portions of the steel design of the concrete masonry units walls to be delayed, thus delaying overall completion of the concrete masonry units work. TBP submitted a TIA for a 21-day extension on March 15, 2006.

(4) Security System Design Delay: TBP was not allowed to start work on the security system until its submissions were approved. During the submission process, the Government added three new security systems to the project. After multiple RFIs were issued regarding the security systems and the Government approved the submissions, changes to the system continued. TBP submitted a TIA for a 50-day extension on May 4, 2006.

ii. <u>Delay Analysis</u>

TBP was also contractually obligated to comply with the Suspension of Work provision when calculating damages due to delay.  This provision provides that the contractor shall be reimbursed for any additional costs incurred by reason of delays caused by the Government.  It goes on to state that reimbursement will not be provided for concurrent delay caused by the contractor, or any other cause:

> However, no adjustment shall be made under this clause for any suspension, delay, or interruption to the extent that performance would have been suspended, delayed, or interrupted by any other cause, including the fault or negligence of the Contractor, or for which an equitable adjustment is provided for or excluded under any other term or condition of this contract.

(48 C.F.R. § 52.242-14(b)).

During the project, TBP retained Trauner Consulting Services, Inc. (Trauner) to assist with monthly updates, TIA preparation, and additional schedule analysis.  Trauner was also retained after project completion to further analyze project delays.  William Manginelli, TBP's expert witness from Trauner, asserts that he performed three types of delay analysis: (1) Time Impact Analysis (as required by the contract in submitting requests for time extensions); (2) Contemporaneous Schedule Analysis (CPM); and (3) As-Planned vs. As-Built Analysis.  The Government retained its own expert, Steve Weathers, to analyze delays in the project.  Mr. Weathers states in his report that TBP caused delays throughout the project.

## II.   DISCUSSION

### A.   *Legal Standards*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *Mingus*

*Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed. Cir. 1987); RCFC 56(c).  The United States Supreme Court has clearly held that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  *Adickes v. S.S. Kress & Co.,* 398 U.S. 144, 158-159 (1970).

      B.    *Delay Damages*

The FAR Suspension of Work clause generally governs contractor claims seeking compensation for Government-caused delays.  *See, e.g., Blinderman Constr. Co., Inc. v. United States,* 695 F.2d 552, 559 (Fed. Cir. 1982); *Mega Constr. Co. v. Unites States,* 29 Fed. Cl. 396, 423 (1993).  To recover contract delays for an alleged Government delay, the contractor must show (1) an unreasonable delay caused by the Government; (2) that the Government is the sole proximate cause of the delay; and (3) the amount of time and/or damages to which the contractor is entitled.  *Id.*  In showing that the Government was the sole proximate cause of the delay, the contractor must show it was not responsible for any concurrent delay that would have equally delayed the contract, regardless of the Government's action or inaction.  *Merrit-Chapman & Scott Corp. v. United States,* 528 F.2d 1392, 1397-98 (Ct. Cl. 1976); *see also Triax-Pacific v. Stone,* 958 F.2d 351, 354 (Fed. Cir. 1992); *Avedon Corp. v. United States,* 15 Cl. Ct. 648, 659 (1988).  It is unclear how much and what type of evidence a contractor is required to produce at the summary judgment stage in order to show it was not responsible for any concurrent delay.

The Government asserts that TBP has failed to fulfill the second element required to prove delay damages because TBP has not produced sufficient evidence during discovery to prove that the Government was the sole proximate cause of the five delays set forth in its TIAs.  In proving that the Government was the sole proximate cause of the delays, TBP was required to consider its own delays when performing a delay analysis.  *Id*.  The Government contends that no such consideration took place, and specifically that Mr. Manginelli did not conduct a review "independent" of

his TIA analysis to take into account concurrent delay.  In support of its motion, the Government cites testimony of Mr. Manginelli, as well as emails apparently indicating concerns of the contractor over subcontractor delays not reflected in the TIAs.  Consequently, the Government asserts TBP's claims for delay damages are defective and must fail as a matter of law.

Conversely, TBP repeatedly cites throughout its briefs that it considered concurrent delays in its delay analysis and found no concurrent delays related to the claims at issue.  TBP's expert, Mr. Manginelli, testified that he performed concurrent delay analysis and that this analysis was the basis for his conclusion that there were no contractor-caused delays for which TBP now seeks compensation.

During Mr. Manginelli's deposition, he answered in the affirmative in response to the question, "And during the time that these 349 days [of delay] occurred on the project site, you found nothing in the project record indicating that T.B. Penick was concurrently responsible for even one day of delay?"  Pl.'s App. at 882.  He further defined concurrent delay as occurring when "more than one event is delaying the critical path of the project such that the project is experiencing a delay that is being caused by more than one event."  *Id.*  Mr. Manginelli also testified that he analyzed delays after project completion by reviewing various documents and inquiring of TBP employees at the construction site whether the contractor was responsible for any delay, to which he received negative replies.  Def.'s App. at 153.  As to the emails, TBP denied they reflected subcontractor delays affecting the critical path.  Rather, they were intended "to mitigate any potential delay issues and to motivate [TBP's] subcontractors to complete their work early in the schedule in order to not use up all the floats which may be needed later."  Decl. of John Tiersma at 3.

TBP is the non-movant in this matter, so the evidence it has presented must be assumed to be true.  Moreover, we must give TBP the benefit of every favorable inference from the evidence it offers.  One may justifiably infer that TBP conducted a concurrent delay analysis given this evidence.  It is not within the Court's power at the summary judgment phase to assess the validity, weight, or accuracy of TBP's and

Mr. Manginelli's assertions as to the cause of the delays at issue.  For present purposes, we find it sufficient that Mr. Manginelli stated he performed concurrent delay analysis and correctly identified the type of delay he was supposed to be analyzing in accordance with the Suspension of Work clause.  We also find it sufficient that he says he conducted an "independent" review to ascertain the causes of the delay set forth in the TIAs by reviewing documents and interviewing TBP personnel after project completion.  Although TBP's analysis may later be found faulty, as the Government asserts in its Reply brief, the fact-finder may make such a determination at trial.  Similarly, TBP has produced sufficient evidence negating the allegation of subcontractor delays and establishing that the Government was the sole proximate cause of the delay damages at issue.

Both TBP and the Government at oral argument recognized that there was dispute as to the parties' respective interpretations of Mr. Manginelli's testimony.  Neither party could articulate a threshold that a contractor must meet at the summary judgment phase to show it considered concurrent delay in its delay analysis.  The Government admitted the cases cited in its briefs discussing the sole-proximate-cause element were decided at the trial phase.

Plaintiff has established a dispute of material fact and the fact-finder could reasonably find in TBP's favor given the evidence.  Accordingly, the disputed claims concerning contractor delay should be resolved at trial.

### III.   Conclusion

For the foregoing reasons, **Defendant's Motion for Partial Summary Judgment is DENIED**.

**IT IS SO ORDERED.**

                                         s/ Lawrence M. Baskir
                                         LAWRENCE M. BASKIR
                                              Judge